(No. 14639.—Decree affirmed.)

MARY L. PILLSBURY, Appellant, *vs.* OLIVE EARLY REIDY *et al.* Appellees.

*Opinion filed October 21, 1922.*

1. SPECIFIC PERFORMANCE—*existence and subject matter of oral contract for conveyance must be clearly established.* In a suit for specific performance of an oral agreement or promise to make a conveyance to the complainant, where the party with whom the contract is alleged to have been made is dead, the complainant must prove, definitely and clearly, not only the existence of the contract but what constitutes the subject matter thereof.

2. SAME—*when check is admissible in suit for performance of contract for conveyance.* In a suit for specific performance of an alleged oral promise to convey property to the complainant in return for services rendered during the lifetime of the promisor, a check showing payment of a certain sum of money to the complainant is admissible in evidence as representing a transaction between the parties, although it is not shown for what purpose the check was issued.

3. SAME—*when legatee under will is not precluded from suing for performance of oral promise to convey.* A devisee or legatee under a will who claims other property of the testator under an

alleged oral contract for a conveyance, is bound to elect either to take the devise or bequest or to rely upon the contract; but in a suit for specific performance of such an alleged promise, if there is no showing that the complainant accepted a bequest to her under the will of the deceased promisor, she is not precluded from maintaining her suit although one and a half years have elapsed since the probate of the will.

APPEAL from the Superior Court of Cook county; the Hon. CHARLES M. FOELL, Judge, presiding.

EARL J. WALKER, for appellant.

JOHN S. HUMMER, and EDWARD A. BIGGS, (CYRUS HEREN, of counsel,) for appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

Appellant seeks review of a decree of the superior court of Cook county dismissing her bill for specific performance, wherein it is alleged that John Early, now deceased, agreed, by parol, that certain real estate described in the bill was to be the property of appellant at his death. Early died on January 22, 1920, leaving a brother and five sisters as his only heirs-at-law. Appellant was not related to him. At the time of his death Early owned considerable real estate, including the property in dispute here, which is referred to by appellant as the Early farm. By his will he devised all his real estate to Olive Reidy, a niece and daughter of Patrick H. Early. Appellant was given $2000 and some personal property. The basis of her bill is an alleged contract which she claims was made in the spring of 1907, by which she was to go to Franklin Park and take charge of Early's home for the benefit of the deceased and his parents, who were elderly people, and that in consideration therefor she was to have at the time of his death the property referred to in the bill.

The chief complaint of appellant is that the decree is contrary to the manifest weight of the evidence. Her tes-

timony tends to establish that in 1900 she conducted a
boarding house in the city of Chicago and Early roomed
and boarded with her; that this continued until 1907, when
Early purchased the house and lots in Franklin Park which
form a part of what appellant now claims under her alleged
contract with Early; that at the solicitation of Early she
sold her boarding house and moved out to Franklin Park,
where she took care of the house and of Early's parents
while they lived there; that in 1900 Early, who was in
the saloon business, suffered financial reverses and ill-health,
and that she loaned him $2000. It is not, however, alleged
in the bill that this $2000 was not re-paid or that it formed
part of the consideration for the alleged contract. Her
evidence tends to show that she was very industrious and
helpful in her work about the home of Early; that she
helped to care for the livestock on the place as well as the
house and proved to be a thrifty, frugal assistant; that at
different times Early stated in conversations with the wit-
nesses testifying thereto, that he had requested appellant to
come to Franklin Park to stay and act as housekeeper for
his parents and himself; that she had refused to come and
work for wages; that he therefore had agreed to give her
the place which he had just bought at Franklin Park if she
would come and take care of his parents as long as they
lived and of him during his lifetime. The testimony of
several witnesses was introduced to show that he had stated
that he owed all that he had made to the assistance of ap-
pellant, and that after he was through with the place it
should go to her. It appears that from time to time after
appellant went to Early's home in Franklin Park he accu-
mulated different pieces of property surrounding the house,
so that before his death he owned a solid tract of about
four blocks. This tract is referred to as the farm, and cer-
tain of appellant's witnesses testify that he told them that
he had promised to give her the farm and that he proposed
to do so. Her testimony tends to show, as alleged in her

bill, that she did not receive wages but that she was to have the property in question upon the death of Early, and in addition thereto to receive one-half of the produce, including the stock, such as horses, cattle and chickens raised on the place.

The will admitted to probate in this case was executed by the deceased June 10, 1910. When deceased made the will he brought it home and showed it to appellant, and she admits that she knew the terms of it. She, however, offered the testimony of Gladys Tuerk, her niece, who was about thirteen years of age in 1910, and who testified on the trial that Early told appellant that he was going to make another will giving appellant the property here claimed. No other will, however, has been made and it is not claimed that there is another will in existence. By that will appellant was bequeathed the sum of $2000. The land she now claims under the contract was by it, as we have seen, devised to Olive Early, (now Reidy,) one of the appellees herein. The evidence shows appellant to be a thrifty woman, who for years conducted business for herself and accumulated property. The evidence does not disclose that she made any objection to the will or to Early making an arrangement for the disposition of the property in case of his death different from that which she claims was made by her contract. At the time he showed her the will he was going to Nevada on a trip. She made no objection to the will thereafter nor sought to have him destroy it, so far as the evidence shows.

Appellees' evidence tends to show that appellant was paid wages for her services and that for some time after the death of Early she made no claim to any part of the premises. When told that he had given her $2000 by the will, she stated that she did not feel it was enough; that she understood she was to have one-half of the poultry and livestock. Appellees' evidence also shows numerous checks were issued by Early to appellant, one for the sum of $1132, dated August 19, 1919, which recites that it is in

full to September 18, 1919. Appellant claims this was to pay a $1100 loan, and interest, which the deceased owed her. It hardly seems probable, however, that a check for the payment of money due, and interest, would be drawn to pay not only the principal and interest in full to date, but include, as contended, interest for a term of one month unexpired, and during which time there was no principal upon which interest could accrue. This check indicates that an accounting of some kind had been had between the parties. The amount of the check and the notation thereon tend to dispute the statement of appellant that it was for money loaned and interest. This view is further strengthened by the testimony of appellees' witnesses that they saw checks of Early in the possession of appellant, one for $300 and another for $500, and that she told such witnesses that she received her wages in lump sums. Witnesses for appellees also stated that in conversations with them she had said on one occasion that she received $25 per month and later on stated she received $40 per month. Appellees' testimony also is that when, after the death of Early, she was told that she would be required to move, she replied that she would not move before June, as the arrangement she had with Early did not expire until that time. Other statements were made by her showing that she claimed a part of the stock and produce but that no claim was made for the premises. It appears that appellees have conceded her the portion of the stock and produce contended for.

On the question of the existence of a contract the evidence is sharply conflicting. In this class of cases, where the one with whom the contract is alleged to have been made is dead, the court should use care in determining the existence of such contract. The chancellor heard the witnesses in open court and is better able to judge their credibility than we. From a review of the entire record in the case we are unable to say that the chancellor should have found that the contract claimed by the bill herein existed. In ad-

dition, it does not appear with definite clearness just what property was to be included in this contract.   It is contended that the contract was made at the time appellant went to Early's home, in 1907; that after the death of his mother, a year and a quarter thereafter, appellant did not desire to longer stay there, and that the contract as set out in the bill was then made between her and Early, but the record shows that a portion of the four blocks constituting what is characterized by appellant's testimony as "the farm" was not owned by Early at that time, and it does not definitely appear that at that time he had contracted for such part thereof; nor does the record show just what property was to be included in that contract, if it was renewed at that time.   The property owned by him at the time appellant claims the contract was made and performance on her part commenced was not a house and four blocks, as claimed in the bill, but consisted of the house and blocks 10 and 16. The party claiming specific performance of a contract must show, definitely and clearly, not only the existence of the contract but what constitutes the subject matter thereof. *Rotes* v. *Rotes,* 277 Ill. 183; *Mould* v. *Rohm,* 274 id. 547; *Lonergan* v. *Daily,* 266 id. 189; *Willis* v. *Zorger,* 258 id. 574.

Appellant contends that the court erred in admitting in evidence the check for $1132, for the reason that it was not shown what the check was issued for.   It is not denied that the check represented a transaction between the parties and that by it money was transferred from Early to appellant. It was competent as evidence of a transaction between them and was admissible for what it was worth.   We find no error in the admission or exclusion of testimony.

Appellees argue that appellant having accepted the $2000 under the will is now precluded from in any way attacking the disposition of other property as made by the will, and cite in support thereof the case of *Gorham* v. *Dodge,* 122 Ill. 528.   In that case the complainant, as here, sought spe-

cific performance of an oral contract. The record showed that she had received the amount of the bequest to her by the will and had receipted for the same. Appellant contends that that case is not applicable here, for the reason there is no showing she has received or accepted any bequest; that while she has filed a claim for services in the probate court, under the authority of *Aldrich* v. *Aldrich,* 287 Ill. 213, this did not preclude her claiming her rights under her contract. Early died January 22, 1920. His will was admitted to probate on March 16, 1920. The bill was filed herein on May 3, 1920. The decree was entered in this cause November 15, 1921, and, so far as the record shows, appellant had not at that time either accepted or rejected the bequest of $2000. The rule is as stated in *Gorham* v. *Dodge, supra,* and *Fishburn* v. *Green,* 291 Ill. 350, that in a case where a devisee under a will also claims a contract as to other property disposed of by the will, such person, when becoming aware of the provisions of the will, is bound to elect whether to rely on the title to the property under the contract claimed, or to abandon that property and take the devise or bequest under the will. Such person cannot take under the will and at the same time undertake to defeat other provisions of the will pertaining to other property. There is no showing as to whether or not the appellant in this case has received and accepted the bequest made her by the will or whether the administration of the estate of Early has been closed, although one and a half years elapsed between the time of the probate of the will and the entry of the decree here. As there is no showing of her having received and accepted this bequest it cannot be said that she was for that reason precluded from bringing her bill in this case. We are convinced, however, that under the record in this case appellant has not made such a showing as entitles her to the relief prayed, and the superior court did not err in dismissing her bill for want of equity.

The decree is therefore affirmed.    *Decree affirmed.*